**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| **JERRY MERRITT,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 6:19-cv-00679** |
| | § | |
| **TEXAS FARM BUREAU, TEXAS FARM** | § | **JURY TRIAL DEMANDED** |
| **BUREAU BUSINESS CORPORATION,** | § | |
| **TEXAS FARM BUREAU CASUALTY** | § | |
| **INSURANCE COMPANY, TEXAS** | § | |
| **FARM BUREAU MUTUAL** | § | |
| **INSURANCE COMPANY, TEXAS** | § | |
| **FARM BUREAU UNDERWRITERS,** | § | |
| **FARM BUREAU COUNTY MUTUAL** | § | |
| **INSURANCE COMPANY OF TEXAS,** | § | |
| **AND SOUTHERN FARM BUREAU** | § | |
| **LIFE INSURANCE COMPANY,** | § | |
| | § | |
| **Defendants.** | § | |

# PLAINTIFF'S ORIGINAL COMPLAINT & JURY DEMAND

## INTRODUCTION

This case implicates Defendants' longstanding policy of misclassifying their employees as independent contractors. In particular, Texas Farm Bureau, Texas Farm Bureau Business Corporation, Texas Farm Bureau Casualty Insurance Company, Texas Farm Bureau Mutual Insurance Company, Texas Farm Bureau Underwriters, Farm Bureau County Mutual Insurance Company of Texas, and Southern Farm Bureau Life Insurance Company (collectively "Defendants") misclassified Plaintiff Jerry Merritt ("Plaintiff") as an independent contractor to his detriment by requiring or permitting him to work as an Agency Manager in excess of 40 hours per week, while refusing to compensate him at the applicable overtime rate.

Plaintiff was not paid any base salary; instead, he was paid exclusively commissions, without any predetermined guaranteed minimum pay per week, and regardless of the number of hours worked. Defendants did not compensate Plaintiff with an additional premium for the overtime hours worked in excess of forty a week. Defendants' conduct violates the Fair Labor Standards Act ("FLSA"), which requires nonexempt employees to be compensated for their overtime work at a rate of one and one-half times their regular rate of pay. *See* 29 U.S.C. § 207. Plaintiff therefore brings this action to recover the unpaid wages owed to him.

## SUBJECT-MATTER JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of this action under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

2.      Venue is proper in the Western District of Texas because a substantial portion of the events forming the basis of this suit occurred in this District.

3.      A substantially related case involving the same Defendants is pending in the Western District of Texas, *Ferguson v. Texas Farm Bureau, et al.*, Cause No. 6:17-cv-111-RP. That case involves a group of Agency Managers, similar to Plaintiff here, alleging they were misclassified as exempt independent contractors.

## PARTIES AND PERSONAL JURISDICTION

4.      Plaintiff Jerry Merritt is an individual residing in McLennan County, Texas.

5.      Defendant Texas Farm Bureau Business Corporation ("TFB Business Corp.") is a Texas corporation, which maintains a presence and corporate address in Waco, McLennan

County, Texas 76712. According to the Texas Farm Bureau's "Career Opportunities" webpage,[1] it employs "over 820 individuals" in "three companies – Texas Farm Bureau, Texas Farm Bureau Business Corporation and Texas Farm Bureau Casualty Insurance Company."[2] The webpage further describes TFB Business Corp. as "provid[ing] administrative support services to Texas Farm Bureau and its affiliated insurance companies." Defendant TFB Business Corp. may be served with process by delivering a copy of the Summons and Complaint to its registered agent, being Si E. Cook, 7420 Fish Pond Road, Waco, Texas 76710-1010, or wherever else he may be found.

6.      According to the Texas Farm Bureau's "Company Information" webpage, its insurance companies include: (a) Texas Farm Bureau Casualty Insurance Company; (b) Texas Farm Bureau Mutual Insurance Company; (c) Texas Farm Bureau Underwriters; (d) Farm Bureau County Mutual Insurance Company of Texas; and (e) Southern Farm Bureau Life Insurance Company.[3] Texas Farm Bureau utilizes letterhead listing these five companies under the umbrella of the "Texas Farm Bureau Insurance Companies."

7.      Defendants' website further represents that Defendants are "Headquartered in Waco, Texas," and a provide "auto, home/property, farm/ranch, life, and health insurance."[4]

8.      Defendant Texas Farm Bureau Casualty Insurance Company ("TFB Casualty"), is a Texas insurance company, which provides auto insurance policies and maintains a presence

---

[1] *Career Opportunities*, TEXAS FARM BUREAU INSURANCE, https://apply.txfb.com/Careers/ (last visited Nov. 24, 2019).
[2] *Id*.
[3] *Company Information*, TEXAS FARM BUREAU INSURANCE, https://www.txfb-ins.com/about-us/company-information (last visited November 24, 2019).
[4] *Id*.

and corporate address in Waco, McLennan County, Texas 76712. Pursuant to Texas Insurance Code § 804.101(b), Defendant TFB Casualty may be served with process by delivering a copy of the Summons and Complaint to the president, an active vice president, secretary, or attorney in fact at Defendant TFB Casualty's home office or principal place of business, being 7420 Fish Pond Road, Waco, Texas 76710, or leaving a copy of the process at the same during regular business hours.

9.      Defendant Texas Farm Bureau Mutual Insurance Company ("TFB Mutual") is a Texas insurance company, which provides home/property insurance policies and maintains a presence and corporate address in Waco, McLennan County, Texas 76712. Pursuant to Texas Insurance Code § 804.101(b), Defendant TFB Mutual may be served with process by delivering a copy of the Summons and Complaint to the president, an active vice president, secretary or attorney in fact at Defendant TFB Mutual's home office or principal place of business, being 7420 Fish Pond Road, Waco, Texas 76710, or leaving a copy of the process at the same during regular business hours.

10.      Defendant Texas Farm Bureau Underwriters ("TFB Underwriters") is a Texas entity providing insurance services, which underwrites insurance policies issued by the other Defendants and maintains a presence and corporate address in Waco, McLennan County, Texas 76712. Pursuant to Texas Insurance Code § 804.101(b), Defendant TFB Underwriters may be served with process by delivering a copy of the Summons and Complaint to the president, an active vice president, secretary or attorney in fact at Defendant TFB Underwriters' home office or principal place of business, being 7420 Fish Pond Road, Waco, Texas 76710, or leaving a copy of the process at the same during regular business hours.

4

11.     Defendant Farm Bureau County Mutual Insurance Company of Texas ("FB County Mutual") is a Texas insurance company, which provides insurance policies and maintains a presence and corporate address in Waco, McLennan County, Texas 76712. Pursuant to Texas Insurance Code § 804.101(b), Defendant FB County Mutual may be served with process by delivering a copy of the Summons and Complaint to the president, an active vice president, secretary or attorney in fact at Defendant FB County Mutual's home office or principal place of business, being 7420 Fish Pond Road, Waco, Texas 76710, or leaving a copy of the process at the same during regular business hours.

12.     Defendant Southern Farm Bureau Life Insurance Company ("SFB Life") is a Mississippi insurance company, which provides life insurance policies and maintains a presence and corporate address in Waco, McLennan County, Texas 76712. Pursuant to Texas Insurance Code § 804.101(b), Defendant SFB Life may be served with process by delivering a copy of the Summons and Complaint to the president, an active vice president, secretary or attorney in fact at Defendant SFB Life's home office or principal place of business, being 7420 Fish Pond Road, Waco, Texas 76710, or leaving a copy of the process at the same during regular business hours.

13.     Defendant Texas Farm Bureau ("TFB") is a Texas corporation, which maintains a presence and corporate address in Waco, McLennan County, Texas 76712. According to its website, TFB "is a membership association led by elected volunteers who are agricultural producers," and "[m]embers from each of the 13 statewide districts nominate a State Director to represent their geographic area on the Board of Directors."[5] Defendant TFB may be served with

---

[5] *Career Opportunities*, TEXAS FARM BUREAU INSURANCE, https://apply.txfb.com/Careers/ (last visited Nov. 24, 2019).

process by delivering a copy of the Summons and Complaint to its registered agent, being Si E. Cook, 7420 Fish Pond Road, Waco, Texas 76710-1010, or wherever else he may be found.

## DEFENDANTS FORM A SINGLE ENTERPRISE AND ARE JOINT EMPLOYERS

14.    The Defendants all form a single enterprise under 29 U.S.C. § 203(r) because they perform related activities for a common business purpose.

15.    Each Defendant engages in activities relating to selling and servicing insurance policies under the Texas Farm Bureau aegis.

16.    Texas Farm Bureau utilizes letterhead listing (a) Texas Farm Bureau Casualty Insurance Company; (b) Texas Farm Bureau Mutual Insurance Company; (c) Texas Farm Bureau Underwriters; (d) Farm Bureau County Mutual Insurance Company of Texas; and (e) Southern Farm Bureau Life Insurance Company under the umbrella of the "Texas Farm Bureau Insurance Companies." These companies are engaged in the selling and servicing of insurance policies in Texas.

17.    All of the Defendants operate out of 7420 Fish Pond Road, Waco, Texas 76710-1010. The Defendants keep records relating to each company and the entire enterprise at this location.

18.    The Defendants operate subject to common management and control. According to Texas Secretary of State records and their website, Defendants share several officers and directors, including, but not limited to, Russell W. Boening, President & Treasurer; Bob Reed, Director; Vernie R. Glasson, Chief Operating Officer; and Cyndi Gerik, Chief Financial Officer & Comptroller.

19.     The Defendants have a unified operation, with each of the entities working together to offer different kinds of insurance in the Texas market under a single Texas Farm Bureau identity.

20.     The Defendants engaged in complementary businesses and were to a significant degree operationally interdependent. Agency Managers worked for all the Defendants, selling insurance lines from all the companies simultaneously. Advertising was under the joint Texas Farm Bureau logo, as were business cards issued to the Agency Managers. Agency Managers had @txfb-ins.com email addresses. Each of the Defendants cooperated to offer different lines of insurance under a single brand.

21.     Relations with the non-profit Farm Bureau arm were equally intertwined. Indeed, the Brazos County and Grimes County Farm Bureau Board Members were charged with interviewing and ultimately approving Agency Managers for Brazos and Grimes Counties, including Plaintiff.

22.     Defendants are an integrated enterprise and joint employers of Plaintiff.

23.     Defendants, formally or as a matter of practice, jointly determine, share, or allocate the ability to direct, control, or supervise Plaintiff, by both direct and indirect means. For example, Plaintiff and other misclassified Agency Managers were supervised by District Sales Managers who were responsible for managing the sales program for all product lines sold by the Defendants. District Sales Managers communicated corporate initiatives, procedures, and guidelines to Plaintiff and other misclassified Agency Managers. Likewise, the same managers and supervisors who oversaw Plaintiff regarding policies issued by Texas Farm Bureau

companies, supervised them for life policies issued by Southern Farm Bureau Life Insurance Company.

24.    Defendants, formally or as a matter of practice, jointly determine, share, or allocate the power to—directly or indirectly—hire or fire Plaintiff or modify the terms or conditions of his employment. For example, Plaintiff was subject to employment-related agreements with each of the Defendants whereby the Defendants misclassified him as an independent contractor. These agreements required Plaintiff to follow guidelines, instructions, or rules contained within the companies' rate books, compliance manuals, and guidelines, which were subject to change at the Defendants' sole discretion. These same agreements reserve the Defendants' right to terminate Plaintiff at will.

25.    The relationships between all of the Defendants is permanent and longstanding.

26.    The day-to-day experience of Plaintiff was that "Texas Farm Bureau" (as listed on their letterhead) was his employer, and the distinctions between the various entities under the TFB umbrella were fairly meaningless to Plaintiff.  For example, supervisors and managers would be described as working for "Texas Farm Bureau" and managed Plaintiff concerning all the insurance lines sold, including all Texas Farm Bureau lines as well as life insurance sold by Southern Farm Bureau Life Insurance Company.

27.    Likewise, the nonprofit Farm Bureau arm was integrally incorporated into the innerworkings of the Brazos County and Grimes County Farm Bureau insurance business. For example, the nonprofit arm executives or board members had ultimate hiring power over Agency Managers for Brazos and Grimes Counties, including Plaintiff.

28.     Plaintiff received pay from the Texas Farm Bureau entities and Southern Farm Bureau Life Insurance Company. Facilities, computers, and other office supplies were supplied by Defendants and used for all work done by Plaintiff.

## FLSA COVERAGE

29.     At all material times, Defendants were employers within the meaning of the FLSA. *See* 29 U.S.C. § 203(d).

30.     Defendants controlled the nature, pay structure, and employment relationship of Plaintiff.

31.     Defendants had, at all times relevant to this lawsuit, the authority to hire and fire Agency Managers, the authority to direct and supervise the work of Agency Managers, the authority to sign on the companies' checking accounts, including payroll accounts, and the authority to make decisions regarding Agency Managers' compensation and capital expenditures. Additionally, Defendants were responsible for the day-to-day affairs of the business. In particular, Defendants were responsible for determining whether they complied with the FLSA.

32.     As such, pursuant to 29 U.S.C. § 203(d), Defendants acted directly or indirectly in the interest of Plaintiff's employment as their employer, which makes Defendants liable under the FLSA.

33.     Furthermore, at all material times, Defendants have been an enterprise in commerce or in the production of goods for commerce within the meaning of § 203(s)(1) of the FLSA because they have had employees engaged in commerce.  *See* 29 U.S.C. § 203(s)(1).

34.     Defendants engaged in related activities performed through a unified operation and common control for a common business purpose.

35.     Defendants have had, and continue to have, an annual gross business volume in excess of $500,000.

36.     At all material times, Plaintiff was an employee engaged in commerce or in the production of goods for commerce as required by *See* 29 U.S.C. §§ 206–207.

## PLAINTIFF WAS MISCLASSIFIED AS AN INDEPENDENT CONTRACTOR

37.     As described in this pleading, Plaintiff was supervised, managed, and employed by "Texas Farm Bureau," an enterprise comprised of several different companies or divisions. There was no distinction made between any of the Defendants with regard to employment of Plaintiff in that all of the Defendants comprised "Texas Farm Bureau" as Plaintiff's employer, and all had control over the scheduling, pay, continued employment, and job duties of Plaintiff.

38.     Plaintiff was directly managed on a day-to-day basis by upper-level employees of Defendants, who also had hiring and firing power over him.

39.     Plaintiff sold insurance and supervised insurance agents on behalf of Defendants.

40.     Plaintiff's managers and supervisors were Sloan Brown and Gary Wood, all employees of Defendants.

41.     These managers and supervisors had the authority to hire and fire Agency Managers like Plaintiff on behalf of Defendants. In fact, supervisors and managers did hire and fire Agency Managers like Plaintiff on behalf of Defendants.

42.     The managers and supervisors had the authority to supervise Plaintiff, and to control schedules and conditions of employment on behalf of "Texas Farm Bureau", Texas Farm

10

Bureau Casualty Insurance Company, Texas Farm Bureau Mutual Insurance Company, Texas Farm Bureau Underwriters, Farm Bureau County Mutual Insurance Company of Texas, and Southern Farm Bureau Life Insurance Company. In fact, supervisors and managers did control the schedules of Agency Managers and the conditions of employment on behalf of Defendants.

43.     Plaintiff and other misclassified Agency Managers were subject to employment-related agreements between themselves and Texas Farm Bureau Mutual Insurance Company and Texas Farm Bureau Underwriters; themselves and Texas Farm Bureau Casualty Insurance Company and Farm Bureau County Mutual Insurance Company of Texas; and themselves and Southern Farm Bureau Life Insurance Company.

44.     These agreements provide that Plaintiff is subject to the guidelines, instructions, or rules contained within the companies' rate books, compliance manuals, and guidelines, which were subject to change at the sole discretion of the companies.

45.     These same agreements reserve the right to the companies to terminate Plaintiff.

46.     These agreements reserve control over the rate and method of payment to the Defendant companies. The companies can modify their obligations of payment by adjusting rate schedules and the like at any time.

47.     Defendants maintain employment records relating to Plaintiff.

## FACTS

**A.  Commissions Only.**

53.     As an Agency Manager, Plaintiff was not paid any base salary, and instead, was paid exclusively commissions without any predetermined guaranteed minimum pay per week.

54.     When he was first promoted to the Agency Manager position in June 2008,

Plaintiff's offer letter stated that he was to be paid only commissions with no guaranteed minimum rate of base pay.

55.     Defendants made no payroll tax or other withholdings from the commissions paid to Plaintiff and reported his income to the IRS by Form 1099 instead.

56.     In connection with his employment with Defendants as an Agency Manager, Plaintiff would receive two 1099 forms for the reporting of his income to the IRS—one issued by TFB Casualty and the other SFB Life.

### B. Long-Term Tenure Contemplated.

57.     Plaintiff was hired by Defendants as an agent in March 1994 for McLennan County, Texas.

58.     Plaintiff was first promoted to Agency Manager in June 2008.

59.     Plaintiff was moved to Brazos and Grimes Counties, Texas when he was promoted to Agency Manager in June 2008. The standard contracts he was required to sign in connection with his transfer explicitly contemplated a long-term period of employment (inconsistent with a bona fide independent contractor classification), providing, for example, that termination benefits were based on "Length of Continuous Service as agency manager" with graduating percentages depending upon whether "Continuous Service" was "Less than 5 years," "At least 5 but less than 6 years," "At least 6 but less than 7 years," "At least 7 but less than 8 years," "At least 8 but less than 9 years," "At least 9 but less than 10 years," or "At least 10 years."

60.     In this regard, a December 2014 Memorandum issued to all "Employees, Agency Managers, Agents, and CFB Secretaries" to announce the promotion of Sloan Brown to Vice

President of Sales effective January 1, 2015, describes his "career" with Defendants starting as an agent in 1993, "tenure" for "three years as Agency Manager," followed by employment as a District Sales Manager from 2000 until he was promoted in 2011 to an Associate State Sales Director position.

### C.  Exclusive Relationship.

61.     Defendants' standard contracts for Plaintiff also required that he work exclusively for Defendants (inconsistent with a bona fide independent contractor classification) and could "represent insurance companies in the state of Texas, other than Companies, only after receiving prior written consent of the Companies to do so."

62.     Defendants' standard contracts for Plaintiff also included 2-year/50-mile radius non-compete and non-solicitation of agents and other Agency Managers following termination of employment (inconsistent with a bona fide independent contractor classification).

### D.  No Sub-Contracting.

63.     Defendants' standard contracts for Plaintiff also provided that he could not sub-contract or assign any duties under the contracts "except with prior written consent of the [Companies/Company]" (inconsistent with a bona fide independent contractor classification). Thus, all services provided for Defendants by Plaintiff were required by Defendants to be performed by him personally.

### E.  Issued Business Cards.

64.     Defendants issued business cards to Plaintiff (inconsistent with a bona fide independent contractor classification).

**F. Closely Supervised By District Sales Managers.**

65.     Plaintiff was closely supervised by Sloan Brown and later Gary Wood, his District Sales Managers who were employed by Defendants (inconsistent with a bona fide independent contractor classification).

66.     Job postings on Defendants' website for a career as a District Sales Manager include as "Major Responsibilities," "Responsible for ***training and managing agency managers*** in all lines of business, ***including adherence to Companies' office procedures***," "***Approve account assignments to*** agents and ***agency managers***," "***Conduct no more than six district sales meetings per year and agency manager meetings*** as deemed necessary from specified agendas determined by the Associate State Sales Directors and Vice President of Sales," "***Conduct in-depth quarterly meetings with each agency manager*** in district ***to review company goals, agency targets, agent training, manpower needs and office procedures***," "***Make weekly site visits*** to the agencies as determined by the Associate Sales Directors."  (Emphasis added.)

67.     Defendants required Plaintiff to provide weekly and monthly reports to his District Sales Manager.

68.     Plaintiff received performance evaluations from Defendants' managers and supervisors.

**G. Issued Company E-mail Account.**

69.     Defendants issued Plaintiff a company e-mail account (inconsistent with a bona fide independent contractor classification).

70.     Plaintiff held himself out to the public as affiliated with Defendants, including, for example, listing the company in his e-mail signature blocks.

14

**H.  Forced Vendor Contract With County Board and Resulting Pay Deductions.**

71.     When Plaintiff was first promoted to the Agency Manager position in June 2008, Defendants required him to enter into a separate "Memorandum of Understanding" with the County Farm Bureau for their particular County and maintain a "good relationship with the County Board [and its] secretaries."

72.     Under these requisite contracts, Plaintiff was forced to obtain from the County Board at designated costs his (a) office space, (b) furniture, (c) local telephone service, (d) office supplies, (e) copy and fax machines and paper for same, (f) secretaries; and (g) other clerical assistants and insurance service representatives ("ISR's").

73.     Defendants would make payroll deductions from Plaintiff's commission earnings to pay these required expenses.

74.     Defendants also made payroll deductions from Plaintiff's commissions for laptop "lease" and internet access expenses.

**I.  Deductions for TFB's Severance Obligations to Former Agency Managers.**

75.     Defendants would make payroll deductions from the commission earnings of Plaintiff for "buy outs" to the former Agency Managers Plaintiff and others replaced (regardless of the reason the former Managers were terminated—including terminations for fraud).

76.     These "buy outs" were Defendants' severance obligations to their former Agency Managers that Defendants required Plaintiffs and other Agency Mangers to pay instead of Defendants' honoring these obligations.

**J.     Primary Job Duties.**

77.     The services provided by Plaintiff and the other Agency Managers were

integrated into Defendants' business operation of selling insurance policies (inconsistent with a bona fide independent contractor classification).

78.     The primary job duties of Plaintiff and the other Agency Managers was to sell insurance, recruit insurance agents, and supervise insurance agents for Defendants whom Defendants classified as independent contractors. The vast majority of these duties were performed inside the office space Plaintiff was required to lease from Defendants.

79.     Namely, Plaintiff would solicit sales of the various insurance products provided by Defendants and service those sales.

80.     Plaintiff would also assist other agents in his office solicit sales of the various insurance products provided by Defendants and service those sales

81.     Plaintiff was also required to remit money received and collected from customers to Defendants.

82.     Plaintiff was required to report customer insurance claims and deliver relevant claim information to Defendants' adjusters or authorized representatives.

**J.  Substantial Overtime Worked Without Overtime Pay.**

83.     Plaintiff typically worked over 40 hours each workweek, with overtime hours estimated at a minimum of five hours during slow weeks to upwards of about 25 hours per week during busy weeks.

84.     Notwithstanding the fact Plaintiff was paid exclusively commissions with no guaranteed salary and had non-exempt job duties as his primary duties, Defendants never paid him any overtime pay.

85.     Defendants knew they were required by the FLSA to pay an additional one and

one-half premium rate for the overtime work of Plaintiff.

86.     Defendants willfully failed to pay Plaintiff any overtime. The failure to pay overtime was a violation of the FLSA, including §§ 207(a) and 215(a)(2).

## VIOLATION OF 29 U.S.C. § 207

87.     Plaintiff incorporates all allegations contained in this pleading.

88.     Defendants' practice of failing to pay Plaintiff time-and-a-half rate for hours in excess of 40 per workweek violates the FLSA. *See* 29 U.S.C. § 207.

89.     None of the exemptions provided by the FLSA pertaining to the duty of employers to pay overtime at a rate not less than one and one-half times the regular rate at which its employees are employed are applicable to the Defendants or Plaintiff.

## VIOLATION OF 29 U.S.C § 211(c)

90.     Plaintiff incorporates all allegations contained in this pleading.

91.     Defendants failed to keep adequate records of Plaintiff's work hours and pay in violation of section 211(c) of the FLSA. *See* 29 U.S.C. § 211(c).

92.     Federal law mandates that an employer is required to keep for three years all payroll records and other records containing, among other things, the following information:

    a.    The time of day and day of week on which the employees' work week begins;

    b.    The regular hourly rate of pay for any workweek in which overtime compensation is due under section 7(a) of the FLSA;

    c.    An explanation of the basis of pay by indicating the monetary amount paid on a per hour, per day, per week, or other basis;

    d.    The amount and nature of each payment which, pursuant to section 7(e) of the FLSA, is excluded from the "regular rate";

  e.  The hours worked each workday and total hours worked each workweek;

  f.  The total daily or weekly straight time earnings or wages due for hours worked during the workday or workweek, exclusive of premium overtime compensation;

  g.  The total premium for overtime hours. This amount excludes the straight-time earnings for overtime hours recorded under this section;

  h.  The total additions to or deductions from wages paid each pay period including employee purchase orders or wage assignments;

  i.  The dates, amounts, and nature of the items which make up the total additions and deductions;

  j.  The total wages paid each pay period; and

  k.  The date of payment and the pay period covered by payment.

*See* 29 C.F.R. §§ 516.2, 516.5.

93.  Defendants have not complied with federal law and have failed to maintain such records with respect to Plaintiff. Because Defendants' records are inaccurate and inadequate, Plaintiff can meet his burden under the FLSA by proving that he, in fact, performed work for which he was improperly compensated, and producing sufficient evidence to show the amount and extent of the work "as a matter of a just and reasonable inference." *See, e.g.*, *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946).

**WILLFULLNESS**

94.  Defendants' method of paying Plaintiff in violation of the FLSA was willful and was not based on a good faith and reasonable belief that their conduct complied with the FLSA.

95.  Defendants were aware of the FLSA's requirement that "all non-exempt

employees be paid 'time and a half' their regular rate of pay for all hours worked in excess of 40 hours in a seven-day week" as evidenced by a 2014 PowerPoint presentation given to Agency Managers by Defendants.

96.     Defendants were aware of the specific job duties of the Agency Managers and that those duties did not fit within any exemption to the FLSA's requirement for overtime pay.

97.     Defendants knew that the position of Agency Manager as the job was intended and performed by Plaintiff was consistent with an employment relationship under the FLSA and that it would be improper to classify the Agency Managers as independent contractors.

98.     Defendants knew or showed reckless disregard for the proper classification of Plaintiff when they classified him as an exempt independent contractor.

99.     Defendants willfully misclassified Plaintiff's position as exempt.

100.     Defendants are liable to Plaintiff for the difference between what Defendants actually paid him and what Defendants were legally obligated to pay him.

101.     Because Defendants knew or showed a reckless disregard for whether their pay practices violated the FLSA, Defendants owe Plaintiff unpaid overtime wages for at least the last three years. *See* 29 U.S.C. § 255(a).

102.     Defendants are liable to Plaintiff in an amount equal to his unpaid overtime wages as liquidated damages.

103.     Defendants are liable to Plaintiff for his reasonable attorneys' fees and costs.

**JURY DEMAND**

104.     Plaintiff hereby demands a jury trial.

19

## PRAYER

105.    For these reasons, Plaintiff respectfully requests that judgment be entered against

Defendants jointly and severally in Plaintiff's favor awarding the following relief and damages:

a)    a judgment awarding Plaintiff overtime compensation for all hours worked over 40 in a workweek at the applicable time-and-a-half rate;

b)    an equal amount of all owed wages as liquidated damages as allowed under the FLSA;

c)    lost wages and liquidated damages equal to the lost wages pursuant to 29 U.S.C.A. § 216(b);

d)    pre-judgment interest;

e)    all costs and attorney's fees incurred prosecuting these claims; and

f)    such other relief to which Plaintiff may be entitled, at law or in equity.

Respectfully submitted,

**WILLIAMS HART BOUNDAS EASTERBY, LLP**

By:      /s/ *John Eddie Williams Jr.*
　　　John Eddie Williams, Jr.
　　　Texas Bar No. 21600300
　　　S.D. Tex. Bar No. 5179
　　　jwilliams@whlaw.com
　　　Brian A. Abramson
　　　Texas Bar No. 24050193
　　　S.D. Tex. Bar No. 634741
　　　babramson@whlaw.com
　　　Sean M. McCarthy
　　　Texas Bar No. 24065706
　　　S.D. Tex. Bar No. 987779
　　　smccarthy@whlaw.com
　　　8441 Gulf Freeway, Suite 600
　　　Houston, Texas 77017
　　　Telephone:  713-230-2200
　　　Facsimile:  713-643-6226

**WYLY & COOK, PLLC**

By:   _/s/ Kelly E. Cook_____
Kelly E. Cook
kcook@wylycooklaw.com
State Bar No. 24062675
S.D. Tex. Bar No: 1022069
Warren A. Berlanga
wberlanga@wylycooklaw.com
State Bar No. 24085199
S.D. Tex. Bar No: 2611869
4101 Washington Ave. 2nd Floor
Houston, TX 77007
Telephone: (713) 236-8330
Facsimile: (713) 863-8502

**MCDOWELL HETHERINGTON LLP**

By:   _/s/ Avi Moshenberg_____
Avi Moshenberg
Texas Bar No.: 24083532
avi.moshenberg@mhllp.com
Nick Lawson
Texas Bar No.: 24083367
nick.lawson@mhllp.com
William B. Thomas
Texas Bar No.: 24083965
william.thomas@mhllp.com
Emil M. Sadykhov
Texas Bar No.: 24110316
emil.sadykhov@mhllp.com
1001 Fannin, Suite 2700
Houston, Texas 77002
Telephone: 713-337-5580
Fax: 713-337-8850

**ATTORNEYS FOR PLAINTIFF JERRY MERRITT**