**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| JERRY MERRITT, | § | CIVIL ACTION NO. 6:19-CV-00679 |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | |
| | § | |
| TEXAS FARM BUREAU, TEXAS FARM | § | |
| BUREAU BUSINESS CORPORATION, | § | |
| TEXAS FARM BUREAU CASUALTY | § | |
| INSURANCE COMPANY, TEXAS | § | |
| FARM BUREAU MUTUAL | § | JURY TRIAL DEMANDED |
| INSURANCE COMPANY, TEXAS | § | |
| FARM BUREAU UNDERWRITERS, | § | |
| FARM BUREAU COUNTY MUTUAL | § | |
| INSURANCE COMPANY OF TEXAS, | § | |
| AND SOUTHERN FARM BUREAU | § | |
| LIFE INSURANCE COMPANY, | § | |
| | § | |
| Defendants. | § | |

---

**THE TEXAS FARM BUREAU**
**DEFENDANTS' RULE 12 (B)(6) MOTION TO DISMISS**

---

**BARRY A. MOSCOWITZ**
State Bar No.  24004830
**CHANTEL L. CHEATHAM**
State Bar No. 24081001
**FARSHEED FOZOUNI**
State Bar No. 24097705

**THOMPSON, COE, COUSINS & IRONS, L.L.P.**
Plaza of the Americas,
700 N. Pearl Street
Twenty-Fifth Floor
Dallas, TX 75201-2832
Telephone:  (214) 871-8200
Telecopy:  (214) 871-8209
E-mail: bmoscowitz@thompsoncoe.com
E-mail: ccheatam@thompsoncoe.com
E-mail: ffozouni@thompsoncoe.com

**ATTORNEYS FOR DEFENDANTS TEXAS FARM BUREAU BUSINESS CORPORATION, TEXAS FARM BUREAU CASUALTY INSURANCE COMPANY, TEXAS FARM BUREAU MUTUAL INSURANCE COMPANY, TEXAS FARM BUREAU UNDERWRITERS, FARM BUREAU COUNTY MUTUAL INSURANCE COMPANY AND TEXAS FARM BUREAU**

## <u>TABLE OF CONTENTS</u>

**I. SUMMARY OF ARGUMENT**...............................................................................................1

**II. MOTION TO DISMISS STANDARD** ...........................................................................3

**III. ARGUMENTS & AUTHORITIES** .................................................................................5

    **A.** **PLAINTIFF'S SWORN TESTIMONY DIRECTLY CONTRADICTS THE CLAIMS IN HIS COMPLAINT AND PROVE HIS FAILURE TO STATE A CLAIM AS A MATTER OF LAW:**.................................................................................................7

        **1.** **Degree of Control:**........................................................................................7

        **2.** **Relative Investment** .......................................................................................8

        **3.** **Opportunity for Profit or Loss** .................................................................10

        **4.** **Skill and Initiative Required for Job** .......................................................11

**IV. CONCLUSION AND PRAYER**....................................................................................11

# TABLE OF AUTHORITIES

PAGE(S)

CASES

*Aschroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................... 3

*Barrentine v. Arkansas–Best Freight System, Inc.*,
   450 U.S. 728 (1981) ........................................................................................... 1

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ..................................................................................... 3, 11

*Biliouris as next friend of Biliouris v. Patman*,
   751 Fed. App'x 603 (5th Cir. 2019) .............................................................. 4, 6

*Birchem v. Knights of Columbus*,
   116 F.3d 310 (8th Cir. 1997) ............................................................................ 1

*Carrell v. Sunland Const., Inc.*,
   998 F.2d 330 (5th Cir. 1993) ....................................................................... 1, 10

*Christopher v. SmithKline Beecham Corp.*,
   567 U.S. 142 (2012) ........................................................................................... 1

*Funk v. Stryker Corp.*,
   631 F.3d 777 (5th Cir. 2011) ............................................................................ 4

*Hopkins v. Cornerstone Am.*,
   545 F.3d 338 (5th Cir. 2008) ........................................................................ 5, 8

*In re Enron Corp. Securities, Derivative & ERISA Litigation*,
   761 F. Supp. 2d 504 (S.D. Tex. 2011) ............................................................. 4

*Knight v. United Farm Bureau Mut. Ins. Co.*,
   950 F.2d 377 (7th Cir.1991) ............................................................................. 1

*Knox v. Rosenberg*,
   1999 WL 35233291 (S.D. Tex. Sept. 28, 1999) .............................................. 3

*Lazy Y Ranch Ltd. v. Behrens*,
   546 F.3d 580 (9th Cir. 2008) ............................................................................ 3

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*,
   594 F.3d 383 (5th Cir. 2010) ............................................................................ 4

*Lovelace v. Software Spectrum Inc.*,
  78 F.3d 1015 (5th Cir. 1996) ........................................................................ 3

*Oestman v. National Farmers Union Ins. Co.*,
  958 F.2d 303 (10th Cir. 1992) ...................................................................... 1

*Parrish v. Premier Directional Drilling, L.P.*,
  917 F.3d 369 (5th Cir. 2019) .................................................................. Passim

*Robinson v. Bankers Life & Cas. Co.*,
  899 F.Supp. 848 (D.N.H. 1995) .................................................................... 1

*Scantland v. Jeffry Knight, Inc.*,
  721 F.3d 1308 (11th Cir. 2013) .................................................................... 1

*Talbert v. Am. Risk Ins. Co.*,
  405 F. App'x 848 (5th Cir. 2010) ................................................................. 1

*Thibault v. Bellsouth*,
  612 F.3d 843 (5th Cir. 2010) ................................................................. 8, 10

*Turner Indus. Grp., LLC v. Int'l Union of Operating Engineers, Local 450*,
  8 F. Supp. 3d 875 (S.D. Tex. 2014) ............................................................. 4

*U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*,
  355 F.3d 370 (5th Cir. 2004) ....................................................................... 4

*United States EEOC v. Catholic Knights Ins. Soc'y*,
  915 F. Supp. 25 (N.D. Ill. 1996) .................................................................. 1

## STATUTES

29 U.S.C. § 202(a) ........................................................................................... 1

## RULES

Fed. R. Civ. P. 5(b)(2)(E) and 5(b)(3) ......................................................... 12
Fed. R. Civ. P. 8 ................................................................................................ 3
Fed. R. Civ. P. 12(b)(6) ..................................................................... 3, 4, 6, 11
Fed. R. Evid. 201(b) ...................................................................................... 4, 6

Defendants Texas Farm Bureau, Texas Farm Bureau Business Corporation, Texas Farm Bureau Casualty Insurance Company, Texas Farm Bureau Mutual Insurance Company, Texas Farm Bureau Underwriters, and Farm Bureau County Mutual Insurance Company (collectively, the "Texas Farm Bureau Defendants") file this *Rule 12(b)(6) Motion to Dismiss* Plaintiff's Original Complaint, and would respectfully show the Court as follows:

## I.
## SUMMARY OF ARGUMENT

Congress enacted the Fair Labor Standards Act ("FLSA") in 1938 with the goal of "protect[ing] all covered workers from substandard wages and oppressive working hours." *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 132 S. Ct. 2156, 2162, 183 L. Ed. 2d 153 (2012) (citing *Barrentine v. Arkansas–Best Freight System, Inc.*, 450 U.S. 728, 739, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981)); *see also* 29 U.S.C. § 202(a). Among other requirements, the FLSA obligates employers to compensate *employees* for hours in excess of 40 per week at a rate of one and one-half times the employees' regular wages. *Christopher*, 567 U.S. at 132 (citing 29 U.S.C. § 207(a)). It is well understood, however, that the FLSA does not apply to independent contractors. *See Carrell v. Sunland Const., Inc.*, 998 F.2d 330, 334 (5th Cir. 1993) (affirming dismissal of plaintiffs' FLSA claims because they were independent contractors); *see also Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1311 (11th Cir. 2013) ("The FLSA's overtime and minimum wage protections ... extend only to 'employees.'"). Accordingly, several courts have held that insurance agents were independent contractors, even when they have had exclusive relationships with insurance companies.[1]

---

[1] *See Talbert v. Am. Risk Ins. Co.,* 405 F. App'x 848 (5th Cir. 2010) (affirming summary judgment for employer, holding that insurance adjuster was an independent contractor); *see also Birchem v. Knights of Columbus*, 116 F.3d 310, 313 (8th Cir. 1997) (citing *Oestman v. National Farmers Union Ins. Co.*, 958 F.2d 303 (10th Cir. 1992) (ADEA); *Knight v. United Farm Bureau Mut. Ins.*

On November 27, 2019, Plaintiff Jerry Merritt filed the instant action claiming he, as an insurance agency manager, was "misclassified" as an independent contractor. Dkt. 1, p. 2 ¶ 3. Notably, Plaintiff inextricably linked his lawsuit to a "substantially related case involving the same Defendants"—*Ferguson v. Texas Farm Bureau, et al.*, Cause No. 6:17-CV-111-RP ("*Ferguson*"), also before the Western District of Texas. Dkt. 1, p. 2 ¶ 3. Furthermore, not only is the Complaint in this lawsuit essentially a facsimile of the *Ferguson* complaint, Plaintiff provided an affidavit in support of *Defendants* in the *Ferguson* matter that explicitly contradicts every allegation he now makes in the instant lawsuit.

In fact, Plaintiff's *Ferguson* affidavit contradicts virtually all the factors analyzed by the Fifth Circuit in determining the "economic realities" of whether someone is an employee or independent contractor. Importantly, Plaintiff testified in *Ferguson* that he controlled the "manner, means[,] and methods by which [he] operate[d];" he independently invested in office space, secretarial assistance, furnishings, and other necessary expenses in relation to his business; he unilaterally made decisions that impacted his expenses and took "certain steps to ensure the success of the county agency;" and he obtained and maintained his Texas insurance license which, by his own admission, "requires special skill, education, and training."

Unsurprisingly, while Plaintiff expressly links his lawsuit to the *Ferguson* suit with respect to the same central allegations, his complaint fails to mention that Plaintiff provided sworn testimony in *Ferguson* directly contradicting every allegation he now makes. Plaintiff cannot have it both ways: he cannot swear he was in full control of his destiny independently from Defendants in a "substantially related case involving the same Defendants" and then separately sue Defendants

---

*Co.*, 950 F.2d 377 (7th Cir.1991) (Title VII); *United States EEOC v. Catholic Knights Ins. Soc'y*, 915 F.Supp. 25 (N.D. Ill. 1996) (Title VII); and *Robinson v. Bankers Life & Cas. Co.*, 899 F.Supp. 848 (D.N.H. 1995) (ADA)).

with allegations contradicting his sworn testimony. Accordingly, Plaintiff's Complaint should be dismissed.

## II.
## MOTION TO DISMISS STANDARD

Following the United States Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the pleading standard under Rule 8 of the Federal Rules of Civil Procedure demands more than "unadorned accusations" that the defendants caused unlawful harm. *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009). In order to survive a Rule 12(b)(6) motion, a plaintiff's complaint must state the grounds for entitlement to relief, including factual allegations sufficient to show that the claim is facially plausible. *Twombly*, 550 U.S. at 555–56; *see also* FED. R. CIV. P. 12(b)(6). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 663 (quoting *Twombly*, 550 U.S. at 556).

A claim is not facially plausible unless the facts alleged in the complaint, taken as true, allow the court to draw a reasonable inference that defendants are liable for the misconduct alleged. *Twombly*, 550 U.S. 555–56; *Iqbal*, 556 U.S. at 663 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.") (internal citations omitted). While facts alleged in a complaint must be taken as true in order to determine facial plausibility, in the context of Rule 12(b)(6), "a court may consider judicially noticeable facts and need not accept the allegations of a complaint as true to the extent that the allegations conflict with such facts." *Knox v. Rosenberg*, No. 4:99-CV-00123, 1999 WL 35233291, at *6 (S.D. Tex. Sept. 28, 1999) (citing *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996); *see also Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008) (holding a court should "not accept as true allegations

contradicting documents that are referenced in the complaint or that are properly subject to judicial notice").

In reviewing a motion to dismiss under Rule 12(b)(6), a court may review the complaint, any documents attached to the complaint, any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint, and matters of public record. *Biliouris as next friend of Biliouris v. Patman*, 751 Fed. App'x 603, 604 (5th Cir. 2019); *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010); *Turner Indus. Grp., LLC v. Int'l Union of Operating Engineers, Local 450*, 8 F. Supp. 3d 875, 883 (S.D. Tex. 2014). "Taking judicial notice of public records directly relevant to the issue in dispute is proper on a Rule 12(b)(6) review and does not transform the motion into one for summary judgment." *Turner*, 8 F. Supp. 3d at 883 (citing *Funk v. Stryker Corp.*, 631 F.3d 777, 780 (5th Cir. 2011)). Importantly, if an exhibit attached to or referenced by the complaint contradicts an allegation in the complaint, the exhibit controls. *See U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004); *see also In re Enron Corp. Securities, Derivative & ERISA Litigation*, 761 F. Supp. 2d 504, 518 (S.D. Tex. 2011).

A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. *See* FED. R. EVID. 201(b). "A court may take judicial notice of the record in prior related proceedings." *Biliouris*, 751 Fed. App'x at 604 (internal quotation marks omitted).

Plaintiff's *Original Complaint* fails to meet the most basic of pleading standards because Plaintiff's prior sworn testimony in *Ferguson* contradicts the allegations made in this lawsuit,

rendering the new allegations facially implausible. Accordingly, Plaintiff's complaint should be dismissed.

In further support of dismissal, the Texas Farm Bureau Defendants state as follows:

## III.
## ARGUMENTS & AUTHORITIES

Plaintiff alleges Defendants violated the FLSA and misclassified him as an independent contractor during the time he worked as an Agency Manager, despite the terms of his contract and previous sworn affidavit. *See* Dkt. 1, p. 1. Courts rely on the economic reality test when determining whether an employer/employee relationship exists under the FLSA. *Hopkins v. Cornerstone Am.*, 545 F.3d 338, 343 (5th Cir. 2008). Under the economic reality test, courts evaluate: (1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship. *Id.* at 343. No single factor is determinative; "[i]nstead, the focus is on an assessment of the economic dependence of the putative employees, the touchstone for this totality of the circumstances test." *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 380 (5th Cir. 2019).

As noted above, Plaintiff seeks to connect his case to *Ferguson v. Texas Farm Bureau, et al.*, Cause No. 6:17-CV-111-RP, claiming that it is a "substantially related case involving the same Defendants . . ." Dkt. 1, p. 2 ¶ 3. To be clear, Plaintiff is represented by the same lawyers as those representing the *Ferguson* plaintiffs. Thus, predictably, Merritt's lawsuit is virtually identical to the claims raised in *Ferguson*. However, Plaintiff fails to tell the Court that he filed an affidavit in support of the same Texas Farm Bureau Defendants in *Ferguson*. In his affidavit, Plaintiff explicitly refutes and contradicts every allegation he now makes. *See* Exhibit previously filed as

"Exhibit C" in *Ferguson v. Texas Farm Bureau Business Corporation, et al.*, No. 6:17-CV-00111-ADA-JCM.

The Texas Farm Bureau Defendants respectfully ask the Court to take judicial notice of the affidavit attached to their *Motion to Dismiss* as a public record from the *Ferguson* lawsuit that Plaintiff directly implicates and references in his *Complaint*. *Biliouris*, 751 Fed. at 604 ("Taking judicial notice of directly relevant public records is proper on review of a Rule 12(b)(6) motion."). As a public record, the affidavit attached in support of the Texas Farm Bureau Defendants' *Motion to Dismiss* is readily known in the territorial jurisdiction of this Court and is capable of accurate and ready determination. *See* FED. R. EVID. 201(b); *see also Biliouris*, 751 Fed. App'x at 604 ("A court may take judicial notice of the record in prior related proceedings." (internal quotation marks omitted)).

In his affidavit in support of Defendants in the *Ferguson* lawsuit, Plaintiff testified:

> I have been advised that a lawsuit has been filed seeking to conditionally certify a class of Agency Managers like myself, claiming that Agency Managers have been improperly classified as independent contractors and not employees. I also understand that the lawsuit alleges that such Agency Managers who were allegedly improperly classified as independent contractors are entitled to overtime compensation for all hours worked over 40 per week going back a number of years. I was informed of my right to speak with an attorney and my right to decline to be interviewed by counsel for the Defendants. I have further been advised that as an Agency Manager, I am potentially a member of the class seeking to be conditionally certified. I submit this affidavit freely and without threat of coercion or reprisal.

*See* Ex. C, p. 2 ¶ 2. Plaintiff now claims in his *Complaint* "[t]he day-to-day experience of Plaintiff was that 'Texas Farm Bureau' . . . was his employer." Dkt 1, p. 8 ¶ 26. And yet, in his affidavit filed in the *Ferguson* lawsuit in support of the same Defendants Plaintiff testified he "agreed and intended to operate as an independent contractor." *See* Ex. C, p. 2 ¶ 5. Plaintiff also testified he contracted with Defendants "to start [his] own business." *See Parrish*, 917 F.3d at 379

("Essentially, our task is to determine whether the individual is, as a matter of economic reality, *in business for himself*." (internal quotation marks omitted and emphasis added)).

Indeed, by reviewing the content of Plaintiff's *Ferguson* affidavit and weighing it against the economic realities factors, it is clear that Plaintiff has failed to plead sufficient facts to state a claim for relief.

### A. PLAINTIFF'S SWORN TESTIMONY DIRECTLY CONTRADICTS THE CLAIMS IN HIS COMPLAINT AND PROVE HIS FAILURE TO STATE A CLAIM AS A MATTER OF LAW:

#### 1. Degree of Control:

Throughout his *Complaint*, Plaintiff alleges he "was supervised, managed, and employed by" Defendants and that Defendants "had control over the scheduling, pay, continued employment, and job duties of Plaintiff." *See* Dkt. 1, p. 7 ¶ 23; p. 9 ¶ 30; p. 10 ¶ 37. Plaintiff also alleges his independent contractor agreement with Defendants made Plaintiff "subject to the guidelines, instructions, or rules contained within the companies' rate books, compliance manuals, and guidelines." *Id.* at p. 11 ¶ 44.

However, the Fifth Circuit has held that "[c]ontrol is only significant when it shows an individual exerts such a control over a meaningful part of the business that the individual stands as a separate economic entity." *Parrish*, 917 F.3d at 381 (internal quotation marks omitted). And "meeting clients' specifications and keeping clients informed of job progress is consistent with the 'usual path' of an [independent contractor]." *Id.* at 382 (internal quotation marks omitted).

In *Parrish*, the Fifth Circuit found a company that "demanded [plaintiffs] comply with its company policies and procedures, including requiring special permission to simply leave the workplace and mandating certain reports be filed in [the company's] preferred format" did not meet the definition of an employer because the company "did not dictate *how* plaintiffs completed" their job nor did the plaintiffs' supervisors "specif[y] how [they] should do [their] primary task."

*Id.* at 381-82 (internal quotation marks omitted); *see also Thibault v. Bellsouth Telecomm.*, 612 F.3d 843, 848 (5th Cir. 2010).

Like the plaintiffs in *Parrish*, Plaintiff has sworn he controlled the "manner, means[,] and methods by which [he] operate[d]." *See* Ex. C, p. 2 ¶ 5. Plaintiff independently recruited and negotiated the compensation of insurance service representatives. *See* Ex. C, p. 3 ¶ 8. He also testified he negotiated separate agreements "with each of the independent agents in [his] agency" on how to handle expense. *See* Ex. C, p. 3 ¶ 8. And, while Defendants "occasionally offer[ed] trainings and/or hold meetings for Agency Managers to share information about their products and the companies, [Plaintiff] was not[] required to attend." *See* Ex. C, p. 3 ¶ 9. Furthermore, Plaintiff made a business decision to enter into an exclusive contract relationship with the Texas Farm Bureau Defendants because "it made it easier for [him] to market [himself] to the Farm Bureau's members because of brand recognition, consolidated underwriting and claims support for [his] customers, and [his] access to insurance products and services that other insurance agents would not be authorized to sell." *See* Ex. C, pp. 2-3 ¶ 6.

Consequently, Plaintiff's declaration, which contradicts the allegations of his complaint and therefore control, fails to establish that the Texas Farm Bureau Defendants exerted such control over Plaintiff's work to create an employer/employee relationship and cannot state a claim under the FLSA.

### 2.  Relative Investment

Courts in the Fifth Circuit use "a side-by-side comparison method in evaluating" the relative investment factor. *Parrish*, 917 F.3d at 383; *see also Hopkins*, 545 F.3d at 344. "To do so, we compare each worker's individual investment to that of the alleged employer." *Id.* (internal quotation marks omitted).

Plaintiff alleges Defendants "required him to enter into a separate 'Memorandum of Understanding' with the County Farm Bureau for their particular County" in order to obtain office space, furniture, secretaries, and other office supplies. *See* Dkt. 1, p. 15 ¶¶ 71-72. Plaintiff also claims Defendants forced him to make "buy out" payments to former Agency Managers in lieu of Defendants honoring their own "severance obligations to their former Agency Managers." *See id.* at p. 15 ¶¶ 75-76.

Yet, Plaintiff's affidavit in support of Defendants in *Ferguson* paints a different picture. Plaintiff testified he "agreed to make 'buyout' payments to [his] predecessor under [his] contracts with the Texas Farm Bureau Defendants" because those payments were "used to compensate the previous Agency Manager based on the renewal premiums existing in the agency at the time the previous Agency Manager's contracts ended." *See* Ex. C, p. 3 ¶ 7. In other words, Plaintiff contractually negotiated and agreed to make these payments because he was *taking over* a prior Agency Manager's business.

Furthermore, Plaintiff's affidavit also refutes his current allegations with respect to the Memoranda of Understanding ("MOUs") with the County Farm Bureau. Specifically, Plaintiff testified "every Agency Manager has the ability to negotiate his/her/its own MOU with the various county farm bureaus." *See* Ex. C, p. 3 ¶ 8. Additionally, Plaintiff and independent agents would recruit and negotiate the compensation of insurance service representatives as their business demands necessitated. *See* Ex. C, p. 3 ¶ 8. In other words, Plaintiff simply reimbursed the County Farm Bureau for business expenses he willingly, and independently, undertook. *See* Ex. C, p. 3 ¶ 8.

In addition, and alternatively, Plaintiff's allegations in his *Complaint* admit the relative investment factor weighs in favor of independent contractor status. As Plaintiff was ultimately

responsible for the expenses he now claims were "forced" on him, his relative investment is obviously significant in relation to that of the Texas Farm Bureau Defendants, which favors an independent contractor relationship. *See, e.g., Carrell v. Sunland Const., Inc.*, 998 F.2d 330, 333 (5th Cir. 1993) (finding welders providing most of their own tools and transportation—to the tune of $15,000 per welder—leaned toward independent contractor status despite company's "overall investment in each . . . project" being "obviously significant").

### 3. Opportunity for Profit or Loss

With respect to Plaintiff's opportunity for profit or loss, "it is important to determine how the workers' profits depend on their ability to control their own costs." *Parrish*, 917 F.3d at 384 (internal quotation marks omitted).

As explained above, Plaintiff's affidavit directly contradicts his *Complaint* and demonstrates the significant investment he willingly and independently undertook in order to further his independent business. Plaintiff was paid on a commissions basis, as noted in his *Complaint*,[2] and also testified in his affidavit that his "commissions were based on the overall success of the agency," which led him to "take[] certain steps to ensure the success of the county agency." *See* Ex. C, p. 3 ¶ 8; *see also Parish*, 917 F.3d at 384 (holding plaintiffs "did have enough control over their profits and losses" to demonstrate independent contractor status because "[a]lthough [defendant] had a set pay schedule . . ., plaintiffs made decisions affecting their expenses"); *Thibault*, 612 F.3d at 848 (noting a nonemployee could "increase[] profits by controlling costs"). Accordingly, Plaintiff's own alleged facts and affidavit in a "substantially related case involving the same Defendants" militate this factor in favor of independent contractor status.

---

[2] *See* Dkt. 1, p. 11 ¶ 53.

### 4.   Skill and Initiative Required for Job

In evaluating the skill and initiative required in performing a job, courts look at "whether plaintiffs have some unique skill set, or some ability to exercise significant initiative within the business." *Parrish*, 917 F.3d at 385 (internal quotation marks omitted). Such skills should not be routine, but rather specialized. *Id.* at 386. Plaintiff's *Complaint* is conveniently silent on the level of skill and initiative the Agency Manager position requires. However, his affidavit in support of Defendants in the *Ferguson* lawsuit makes clear that "[o]btaining and maintaining my [state-issued insurance] license requires special skill, education, and training." *See* Ex. C, p. 2 ¶ 3. Plaintiff also demonstrated significant initiative because he independently "determine[d] the manner, means and methods by which [he] operate[d]." *See* Ex. C, p. 2 ¶ 5. Accordingly, while Plaintiff attempts to sidestep this factor, his own admissions—both in his *Complaint* and in his *Ferguson* affidavit— weigh heavily in favor of independent contractor status.

Since Plaintiff's affidavit directly contradicts his many of the facts pleaded in his *Complaint*, Plaintiff cannot plead factual allegations sufficient to show his claim is facially plausible. *Twombly*, 550 U.S. at 555–56.

### IV.
### CONCLUSION AND PRAYER

As the above discussion makes clear, Plaintiff Merritt failed to allege plausible facts to support his claim against the Texas Farm Bureau Defendants. Thus, the Texas Farm Bureau Defendants respectfully request the Court dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

Respectfully submitted,

By:  /s/ Barry A. Moscowitz
**BARRY A. MOSCOWITZ**
State Bar No.  24004830
**CHANTEL L. CHEATHAM**
State Bar No. 24081001
**FARSHEED FOZOUNI**
State Bar No. 24097705

**THOMPSON, COE, COUSINS & IRONS, L.L.P.**
Plaza of the Americas,
700 N. Pearl Street
Twenty-Fifth Floor
Dallas, TX 75201-2832
Telephone:  (214) 871-8200
Telecopy:  (214) 871-8209
E-mail: bmoscowitz@thompsoncoe.com
E-mail: ccheatam@thompsoncoe.com
E-mail: ffozouni@thompsoncoe.com

**ATTORNEYS FOR DEFENDANTS
TEXAS FARM BUREAU BUSINESS
CORPORATION, TEXAS FARM
BUREAU CASUALTY INSURANCE
COMPANY, TEXAS FARM BUREAU
MUTUAL INSURANCE COMPANY,
TEXAS FARM BUREAU
UNDERWRITERS, FARM BUREAU
COUNTY MUTUAL INSURANCE
COMPANY AND TEXAS FARM BUREAU**

## CERTIFICATE OF SERVICE

Pursuant to *Fed. R. Civ. P.* 5(b)(2)(E) and 5(b)(3), I hereby certify a true and correct copy of the foregoing was filed electronically on this 15th day of January, 2020. The parties may access this filing through the court's electronic filing system.

/s/ Barry A. Moscowitz
Barry A. Moscowitz