UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **JERRY MERRITT,** § | |
| § | |
| **Plaintiff,** § | |
| § | |
| v. § | |
| § | |
| **TEXAS FARM BUREAU, TEXAS FARM** § | |
| **BUREAU BUSINESS CORPORATION,** § | |
| **TEXAS FARM BUREAU CASUALTY** § | **CIVIL NO. W-19-CV-00679-DTG** |
| **INSURANCE COMPANY,  TEXAS** § | |
| **FARM BUREAU MUTUAL** § | |
| **INSURANCE COMPANY,  TEXAS** § | |
| **FARM BUREAU UNDERWRITERS,** § | |
| **FARM BUREAU COUNTY MUTUAL** § | |
| **INSURANCE COMPANY OF TEXAS,** § | |
| **SOUTHERN FARM BUREAU LIFE** § | |
| **INSURANCE COMPANY,** § | |
| § | |
| **Defendants.** | |

## OMNIBUS PRE-TRIAL ORDER

On May 10, 2023, the Court held a Pre-Trial Conference and heard oral argument on Defendants' Motion for Summary Judgment for Failure to Provide Notice (ECF No. 102) and the cross-motions for Summary Judgment on the White-Collar, Administrative, and Executive Exemptions (ECF Nos. 100 and 107).  The Court issued oral rulings **DENYING** ECF No. 102, **DENYING** ECF No. 100, and **GRANTING** ECF No. 107 for the reasons stated on the record. The Court also issued oral rulings on several of the remaining motions where the parties determined oral argument was unnecessary.  The Court hereby memorializes the Court's rulings on those remaining motions and issues additional guidance on Pre-Trial Procedures.

**I.      THE COURT'S RULINGS ON PENDING MOTIONS**

    **A.**    **Plaintiff's Motion for Partial Summary Judgment on Overtime Hours Worked (ECF No. 92)**

Merritt's request for partial summary judgment that he is entitled to at least 816 hours of overtime pay is **GRANTED**. It is undisputed that Defendants did not keep records of the number of hours Mr. Merritt worked. *See* ECF No. 92 at 2-3; ECF No. 124 at 4. Both Texas Farm Bureau and Southern Farm Bureau had deponents who admitted that Merritt "likely" or could have worked more than 40 hours per week. ECF No. 92 at 2-3. In fact, Merritt's supervisor Gary Wood indicated there was "no doubt" Merritt worked overtime. ECF No. 140 at 8. Merritt testified that he believed he worked between 52-58 hours of work per week and that there were 5 weeks for travel and 5 weeks due to personal issues he did not work more than 40 hours. ECF No. 92 at 3-4. Merritt supported his testimony with dates of employment, work schedule, and duties. ECF No. 140 at 6. For purposes of the Motion, Merritt calculated the number of overtime hours based on an estimate of 12 hours of overtime worked per week and 81 weeks which excludes 10 weeks of work. ECF No. 92 at 5. Defendants counter that Merritt's estimate omits an additional 13 weeks where Merritt took time off, indicated in Merritt's personal calendar and interrogatory answers. ECF No. 124 at 14-17. In reply, Merritt revises his calculation for overtime to 12 hours per week and 68 weeks coming out to 816 hours, to account for the 13 weeks called into question by Defendants. ECF No. 140 at 10.

Summary judgment is only appropriate when the moving party shows that "there is no genuine dispute as to any material fact" and that it "is entitled to "judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if a "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When considering the parties' submissions, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Id.* at 255. "

The FLSA obligates employers to keep accurate records of the hours worked by employees. 29 U.S.C. § 211(c).  When an employer fails to meet that obligation, "if he [the employee] proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the Court may then award damages to the employee, even though the result be only approximate." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946). Plaintiff need to only produce "*some evidence*" to show the amount and extent of the violation. *Beliz v. W.H. McLeod & Sons Packing Co.*, 765 F.2d 1317, 1330 (5th Cir.1985) (emphasis added); *see also Reeves v. Int'l Tel. & Tel. Corp.*, 616 F.2d 1342, 1351 (5th Cir. 1980) ("Where the inaccuracy is due to the employer's failure to keep adequate records as required by statute, *imprecise evidence on quantum* can provide a 'sufficient basis' for damages." (emphasis added) (quoting *Mt. Clemens Pottery Co.*, 328 U.S. at 687)). Documentary evidence is not required to satisfy this burden, and estimates derived from Plaintiff's testimony are sufficient under *Mt. Clemens*. *See Hobbs v. EVO Inc.*, 7 F.4th 241, 257 (5th Cir. 2021); *Mohammadi v. Nwabuisi* 990 F. Supp. 2d 723, 739-40 (W.D. Tex. Jan. 2, 2014), aff'd in part, rev'd in part on other grounds and remanded, 605 Fed. Appx. 329 (5th Cir.); *Garner v. Chevron Phillips Chem. Co., L.P.*, 834 F. Supp. 2d 528, 546 (S.D. Tex. 2011) (explaining that a plaintiff may meet his initial burden through "plaintiff's testimony as to when and how many overtime hours he worked, plaintiff's affidavit to such, etc."); *Reeves*, 616 F.2d at 1352 (holding that unpaid wages based on plaintiff's estimate of the average number of hours worked each week,

which "corresponded to the rough computations of his subconscious mind" was sufficient evidence.); *Beliz*, 765 F.2d at 1330 (holding that a district court "was laboring [under] a misconception of the legal standard" when it denied the plaintiffs recovery "based on [their] inability to produce the 'definite and certain' evidence thought necessary by the district court.").

Here, Defendants failed to keep any record of the hours which Plaintiff worked and do not dispute that. Therefore, Plaintiff is entitled to the *Mt. Clemens* burden-shifting framework and only needs to prove the extent of the hours he worked as a matter of just and reasonable inference. Plaintiff's calculations are based not only on his own testimony (and conservative estimates), but the confirmation from his employers that he worked overtime. To the extent that the extra 13 weeks of overtime included in Plaintiff's initial calculation negate the reasonableness of the calculation with respect to those 13 weeks, Plaintiff has adjusted his calculation. Plaintiff's updated calculation therefore meets the *Mt. Clemens* burden. Notably, with respect to the methodology of the calculation or the overall calculation Defendant has not proffered any evidence "of the precise amount of work performed or with evidence to negate the reasonableness of the inference to be drawn from the employee's evidence." *Mt. Clemens*, 328 U.S. at 687.

Therefore, since there are no factual disputes remaining over Plaintiff's estimate (other than Defendant alleging with no underlying support that it is unsubstantiated and illegitimate, running contrary to the requirement of *Mt. Clemens*), the motion for partial summary judgment is appropriately **GRANTED** as to Merritt's revised estimate of overtime of 816 hours.

  **B.**  **Plaintiff's Motion for Partial Summary Judgment on the Outside-Sales Exemption (ECF No. 94)**

To meet their burden that the outside-salesperson exemption applies, Defendants must prove that Merritt had a primary duty of "making sales" within the FLSA's meaning. 29 C.F.R.

§541.500(a). The FLSA defined "sale" or "sell" as "includ[ing] any sale, exchange, contract to sell, ... or other disposition." 29 U.S.C. §203(k). The Supreme Court has made clear that the phrase "other disposition" accommodates "industry-by-industry variations in methods of selling commodities" and includes "those arrangements that are tantamount, in a particular industry, to a paradigmatic sale of a commodity." *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 164 (2012). But this Court determined in *Ferguson* that Farm Bureau Agency Managers do not make sales under the outside-salesperson exemption. *Ferguson v. Tex. Farm Bureau*, No. 6:17-CV-00111-ADA-JCM, 2021 WL 2349340, at *17–18 (W.D. Tex. May 19, 2021), *report and recommendation adopted*, No. 6-17-CV-00111-ADA, 2021 WL 7906826 (W.D. Tex. June 22, 2021).

Defendants argue that the Court's ruling in *Ferguson* does not apply since the Court entered summary judgment in that case without argument or evidence from Defendants. ECF No. 144 at 16. But the Court's analysis still applies. There, this Court held that "[Agents] do not make sales within the meaning of the Outside Sales Exemption because they do not have authority to complete sales without needing the company's approval." *Ferguson*, 2021 WL 2349340*, at *17. As this Court further explained, "Defendants retain the authority to reject applications not only for legal or technical insufficiencies, but also for business reasons after conducting a risk assessment." *Id.*

Defendants also point to *Flood* and *Martinez* to argue against summary judgment, but those cases are distinguishable. *See Flood v. Just Energy Mktg. Corp.*, 904 F.3d 219 (2d Cir. 2018); *see also Martinez v. Superior HealthPlan, Inc.,* 371 F. Supp. 3d 370 (W.D. Tex. 2019)*.* In both cases, the agents were selling Medicare Advantage plans, and the Court in *Flood* acknowledged that applicants were only denied for legal and technical reasons. This is not like Farm Bureau's risk-based underwriting, where it retains discretion to deny applicants for any reason. This Court in

*Ferguson* also considered the *Flood* opinion and distinguished it. Further, Defendants even concede that Merritt's contract specifically states that he is contractually forbidden to make, alter, or discharge insurance contracts "unless authorized by [Defendants]." ECF No. 120. Thus, Merritt does not make sales under the outside-salesperson exemption.

Even if Merritt was making sales, though, summary judgment would still be warranted. To meet its burden that the outside-salesperson exemption applies, Defendants must prove not only that Merritt was making sales, but that making sales was Merritt's "primary duty." Defendants concede that the Fifth Circuit has recognized that "primary duty" refers to the principal, main, major, or most duty that the employee performs. *See* ECF No. 144 at 17 (citing *Jones v. New Orleans Reg'l Physicians Hosp. Org., Inc*. 981 F.3d 428, 432 (5th Cir. 2020) (quoting 29 C.F.R. § 541.700(a))).

Notably, in the Response, Defendants do not once argue that making sales is Merritt's primary duty. Rather, they assert only that outside sales activities and exempt administrative and managerial responsibilities *could* collectively constitute his "primary duty." ECF No. 144 at 19 (emphasis added). But Merritt cites to testimony from Merritt's manager and Defendants' representatives that managing the agency was more important than sales. ECF No. 90-1, Ex. 34, at 16:14–18:17; 18:5–17, 25:2–27:1; Ex. 8, 91: 1–5; Ex. 5, 158:25–159: 6; Ex. 3, 211:22–212:3; 256:14–257:3; Ex. 4, 19:7–19; 22:1–9; 92:4–93:6. Further, when objecting to Judge Manske's recommendation to grant summary judgment on the outside-salesperson exemption in *Ferguson*, Defendants also conceded that it did not object to the portion of the Report finding that Plaintiffs' primary duty was management. *See Ferguson*, No. 6:17-cv-00111, ECF No. 360 at 15 n.9. Accordingly, making sales was not Merritt's primary duty, and summary judgment as to the outside-salesperson exemption is proper.

### C. Defendants' Motion for Partial Summary Judgment on Plaintiff's Use of an Incorrect OT Multiplier and Demand for Prejudgment Interest (ECF No. 99)

Defendants' motion raises two issues: (1) whether Merritt is entitled to a 1.5 multiplier for his claim for overtime compensation under the FLSA and (2) whether Merritt is entitled to prejudgment interest.

**1. Overtime Multiplier.**

Merritt claims he is entitled overtime compensation in the amount of 1.5 times his regular hourly rate for the hours worked overtime. Defendants argue that Merritt is entitled to only 0.5 times his regular hourly rate for overtime under FLSA regulations. FLSA regulations generally provide for an overtime multiplier of 1.5. 29 C.F.R. § 778.107 ("The general overtime pay standard . . . requires that overtime must be compensated at a rate not less than one and one-half times the regular rate at which the employee is actually compensated."). However, FLSA regulations provide exceptions to this general rule. For commissions, the FLSA regulations state:

> When the commission is paid on a weekly basis, it is added to the employee's other earnings for that workweek . . ., and the total is divided by the total number of hours worked in the workweek to obtain the employee's regular hourly rate for the particular workweek. The employee must then be paid extra compensation at one-half of that rate for each hour worked in excess of the applicable maximum hours standard.

29 C.F.R. § 778.118. FLSA regulations also state that where it is not possible to allocate commission for each work week, the regular hourly rate can be calculated by other reasonable and equitable methods. 29 C.F.R. § 778.120. As one example, the regulation states:

> If there is a monthly commission payment of $416, the amount of commission allocable to a single week is $96 ($416 × 12 = $4,992 ÷ 52 = $96). In a week in which an employee who is due overtime compensation after 40 hours works 48 hours, dividing $96 by 48 gives the increase to the regular rate of $2. Multiplying one-half of this figure by 8 overtime hours gives the additional overtime pay due of $8. The $96 may also be multiplied by 0.083 (the appropriate decimal shown on the coefficient table) to get the additional overtime pay due of $8.

29 C.F.R. § 778.120(a)(2)(i). Even where it is not possible to allocate commission for each workweek, the FLSA regulations use a 0.5 multiplier for calculating overtime compensation. *Id.* Defendants argue that

under FLSA regulations, Merritt is entitled to only a 0.5 multiplier because he earned his wages through commissions. ECF No. 99 at 6.

In response, Merritt argues that the FLSA regulations only set a 0.5 overtime multiplier for (1) employees that earn a commission that is paid on a weekly basis (under 29 C.F.R. § 778.118 quoted above) and (2) employees that earn a commission that is paid on a deferred basis (under 29 C.F.R. §§ 778.119-20). ECF No. 114 at 5. Because Merritt was paid on a monthly basis, he argues that 29 C.F.R. § 778.118 is inapplicable. *Id.* Merritt further argues that 29 C.F.R. §§ 778.119-20 are inapplicable because he was not paid on a deferred basis. *Id.* at 1. Merritt claims that a deferred commission payment occurs where "the calculation and payment of the commission cannot be completed until sometime after the regular pay day for the workweek." *Id.* (quoting 29 C.F.R. § 778.119). Merritt argues that his commission payments were not deferred because he received his commission payments on the next monthly pay day after Farm Bureau approved the application, accepted the payment, and issued a policy for Merritt's customers. *Id.* at 3. Because Merritt's commission payments were paid in the monthly pay period that they were earned, Merritt argues that his commissions were not deferred commission payments and 29 C.F.R. §§ 778.119-20 are inapplicable. *Id.* at 6-9.

In reply, Defendants explain that the FLSA regulations use a "workweek" as the basis for overtime payment, and that the FLSA regulations require determining an employee's compensation on a weekly basis to calculate overtime. ECF No. 145 at 2 (citing 29 C.F.R. § 778.104). Where commission is not paid on a weekly basis, Defendants argue that § 778.120 sets out formulas for allocating commission to each workweek. *Id.* at 3. Thus, Defendants argue that the overtime multiplier set in § 778.118 applies even if the employee is not paid on a weekly basis. *Id.* at 3. Defendants further argue that Merritt's commission payments were deferred because he was not paid for his commissions at the end of each *workweek*—instead he was only paid at the end of each month. *Id.* at 4.

Merritt provides two cases in support of his argument. First, Merritt cites *Schwind v. EW Associates, Inc.*, to argue that deferred commission payments take place on a "fluctuating and irregular schedule." ECF No. 114 at 7; No. 219CV00756JNPCMR, 2021 WL 778533, at *1 (D. Utah Mar. 1, 2021). Second, Merritt

cites *Clyde v. My Buddy Plumber Heating & Air, LLC*, No. 219CV00756JNPCMR, 2021 WL 778533 (D. Utah Mar. 1, 2021). In this case, an employee was paid commission only after customers completed their payments, which could be weeks or months after the employee completed services for the customers. *Id.* at *1. Merritt cites this case for the proposition that deferred commission payments take place outside the pay period that the commission is earned. ECF No. 114 at 7. Defendants argue that neither of these cases show that Merritt's monthly commission payments are entitled to a 1.5 overtime multiplier. ECF No. 145 at 4-5.

Because the FLSA regulations specifically discuss applying a 0.5 multiplier where an employee is paid commission on a monthly basis, summary judgment is appropriate here. 29 C.F.R. § 778.120 seems to apply in situations like this, where the commission is not allocated to specific workweeks. I recommend finding that 29 C.F.R. § 778.120 is applicable here and that 0.5 is the appropriate overtime multiplier. *See Grimm v. Moore*, No. 4:14-cv-329, 2015 WL 2405362, at * 2 (E.D. Tex. May 19, 2015) (Mazzant, J.) (applying a 0.5 overtime multiplier where an employee earning commission was paid on a biweekly basis).

**2. Prejudgment Interest.**

Defendants argue that Merritt is not entitled to prejudgment interest because the Fifth Circuit does not authorize recovery of prejudgment interest in FLSA cases. ECF No. 99 at 6. Defendants cite *Cox v. Brookshire Grocery Co.*, 919 F.2d 354 (5th Cir. 1990). In *Cox*, the Fifth Circuit concluded that employees seeking recovery under § 216 of the FLSA are entitled to liquidated damages—not prejudgment interest. *Id.* at 357.

Merritt concedes that he is not entitled prejudgment interest because he is seeking liquidated damages under § 216 of the FLSA. ECF No. 114 at 10. Because both parties agree that prejudgment interest should not be awarded, partial summary judgment on this issue is appropriate. As such, Defendant's Motion (ECF No. 99) is **GRANTED**.

**D.     Defendants' Joint Motion to Strike and Objections to Merritt Declaration in Support of Plaintiff's Summary Judgment Motions (ECF No. 119)**

Defendants' Motion to Strike and Objections to the Declaration of Jerry Merritt (ECF No. 90-2 at 9-18, the "Declaration") filed by Plaintiff in support of his motions for summary judgment is hereby by **GRANTED-IN-PART** and **DENIED-IN-PART**.

***First***, Plaintiff submitted a signed, sworn, and notarized Affidavit in the *Ferguson* matter in June 2017. Defendants contend that Plaintiff's declaration in this case contradicts that *Ferguson* affidavit. The Court finds that statements cited by Defendants are not inconsistent. Accordingly, the Court **DENIES** Defendants' Motion to Strike on this ground.

***Second,*** Defendants argue that paragraphs 3, 7–13, 15, 17, 20–21, 24, 26–27 constitute hearsay, lack foundation, or are otherwise non-specific, conclusory, or speculative, and should be stricken. The Court finds that the following two portions of paragraphs 3 and 20 of Mr. Merritt's declaration should be stricken for impermissible hearsay under Federal Rule of Evidence 802: (1) "Farm Bureau communicated to me (and other agency managers I was friendly with) that failing to meet Farm Bureau's expectations, especially in terms of production, would likely result in termination" and (2) "Farm Bureau expressed to its agents and agency managers, including me, that customers who fell within the underwriting guidelines should be solicited." Otherwise, the Court finds that Merritt's declaration is based on his personal knowledge and sets forth in detail his experience working for Farm Bureau as an Agent and Agency Manager. Moreover, the Court also finds that the Declaration's reference to Defendants as "Farm Bureau" is consistent with Mr. Merritt's pleading that Defendants are joint employers, whose employment of Merritt is considered "one employment" under the Act. Accordingly, the Court **GRANTS-IN-PART and DENIES-IN-PART** Defendants' Motion to Strike on this ground.

***Third***, Defendants contend that Mr. Merritt's statement in his Declaration at paragraph 26 that "Farm Bureau did not pay me any base salary," should be stricken because it is an improper

opinion and legal conclusion lacking foundation. Yet "a person may testify as a lay witness only if his opinions or inferences do not require any specialized knowledge and could be reached by any ordinary person." *See Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 460 (5th Cir. 1996). Whether the employer's payment scheme meets the "salary basis test" under the Act is another question entirely—a matter on which Mr. Merritt does not opine. And whether Plaintiffs were guaranteed pay is an opinion that "could be reached by any ordinary person" and requires no specialized knowledge. *See id.* Accordingly, the Court **DENIES** Defendants' Motion to Strike on this ground. **Finally,** Defendants contend that Mr. Merritt's declaration should be stricken because it is not properly signed. The Declaration contains only a typed signature "/s/ Jerry Merritt." The Court finds that Mr. Merritt's Declaration does not comply with 28 U.S.C. § 1746 and is not competent evidence. *See Lumar v. Monsanto Co.*, 395 F. Supp. 3d 762, 776 (E.D. La. 2019), *aff'd*, 795 F. App'x 293 (5th Cir. 2020) (declining to consider two declarations that contained, like Plaintiff's Declaration here, typed names instead of handwritten signatures). Because Plaintiff's current Declaration is not properly signed, it lacks competency and should be disregarded when considering Plaintiff's summary judgment filings. However, the Court **GRANTS** Plaintiff leave to leave to amend the declaration to include a hand-written signature in order to comply with 28 U.S.C. § 1746. If the Plaintiff is unable to do so within seven days, then the Court will strike the entirety of Mr. Merritt's declaration.

   **E.**  **Defendants' Joint Motion to Exclude Plaintiff's Retained Expert Denise Kay (ECF No. 131)**

Defendants move to strike Plaintiff's expert, Denise Kay, a self-described "dedicated human resources consultant." ECF No. 131 at 1-2. Ms. Kay purports to offer the following opinions at trial: (1) Defendants failed to follow Human Resources (HR) "standards" by classifying Agency Managers as independent contractors without a recognized basis and without

regularly examining their classification; and (2) a competent HR professional would have advised Defendants that the Agency Managers were employees (and not independent contractors); therefore, Defendants' Agency Managers were not properly classified. ECF No. 131 at 1. Defendants take issue with several aspects of Ms. Kay's opinions:

*First*, Defendants argue that Ms. Kay's testimony usurps the factfinder's role to decide Plaintiff's classification. It is well-settled law that "Experts cannot 'render conclusions of law' or provide opinions on legal issues." *Renfroe v. Parker*, 974 F.3d 594, 598 (5th Cir. 2020). In the FLSA context, an expert may not opine on the ultimate issue of whether an employer is entitled to an exemption. "[T]he ultimate determination of whether an employer qualifies for an exemption under the FLSA is a question of law' for the court to decide." *Gelhaus v. Wal-Mart Stores, Inc.*, 769 F. Supp. 2d 1071, 1077 (E.D. Tex. 2011) (internal quotation omitted). In the present matter, that means that Ms. Kay cannot testify that Plaintiff was misclassified as an independent contractor. Ms. Kay comes close to doing so but does not quite get there.

*Second*, Defendants argue that that Kay's opinions are unreliable under Rule 702 in that they are not based on sufficient facts or data, failed to rely on reliable or accepted principles, and failed to apply the principles and methods to the facts of the case. ECF No. 131 at 7-11. The Court need not recite Defendants' arguments because on this issue—whether Plaintiff should have been classified as an independent contractor or employee—the Court does not need an expert's opinion. Both parties testified at oral argument on their related summary judgment topics on this issue that there are *no factual disputes*. Ms. Kay's testimony therefore is unhelpful to the Court, who is the ultimate factfinder on this issue. Ms. Kay's opinions are unnecessary because they do not "assist the trier of fact to understand or determine a fact in issue." *Bocanegra v. Vicmar* Servs, Inc., 320 F.3d 581, 584 (5th Cir. 2003). For this reason, the Court

finds Kay's opinions on everything other than the few opinions on willfulness (the only unresolved issue) to be unhelpful. Thus, the Court **GRANTS-IN-PART** Defendant's Daubert of Ms. Kay (ECF No. 131).

### F. Plaintiff's Motion to Exclude the Testimony of Expert Ernest Csiszar (ECF No. 133)

Defendant's Expert, Ernest Csizar, is largely a counter-expert to Denise Kay. For the same reasons above, the Court finds Mr. Csizar's opinions pertinent to the Independent Contractor and Commission Exemptions to be unhelpful, as those motions have now been resolved. The only remaining opinions (which are few) pertain to willfulness, which the Court will permit testimony on. Therefore, the Court **GRANTS-IN-PART** Plaintiff's Daubert of Ms. Csiszar (ECF No. 133).

### G. Plaintiff's Motion to Exclude the Testimony and Opinions of Charles Pearl (ECF No. 134)

Mr. Pearl's opinions entirely relate to the White-Collar Exemption and whether Plaintiff meets the salary-basis test. He admits that he was engaged to "opine whether, during the relevant period that the Plaintiff was contracted with the Farm Bureau Insurance Companies . . . the Plaintiff received a pre-determined amount of compensation on a monthly basis that would exceed $1,972 per month, regardless of variations in the quality or quantity of the Plaintiff's work." ECF No. 134 at 1-2. Because this issue has been resolved as a matter of law, the Court finds this testimony unhelpful and **GRANTS** the Daubert motion.

### H. Plaintiff's Motion to Exclude the Testimony of Robert Manz (ECF No. 135)

Robert Manz's testimony concerns Merritt's status as an employee versus independent contractor. Farm Bureau designated Mr. Manz to testify that Jerry Merritt's "tax returns and related information in connection with this lawsuit" prove he is an independent contractor and

not an employee. ECF No. 155 at 2. This issue will not be going to the jury, has already been resolved at the summary judgment stage, and as such is not helpful.  The Motion is **GRANTED**.

## II. MOTIONS IN LIMINE

| **Plaintiff's Motion in Limine** | | | | | |
|---|---|---|---|---|---|
| **Number** | **Topic** | **Agreed** | **Granted** | **Denied** | |
| 1 | Dollar amount of Merritt's income | | | XX | |
| 2 | Merritt's belief, intent, or agreement to be an independent contractor | | XX | | |
| 3 | Independent contractor status under other circumstances (such as IRS Standards or on federal tax forms) | | XX | | |
| 4 | Failure by Merritt to keep records of his hours worked | | | XX | |
| 5 | Merritt condoned offensive emails | | XX | | |
| 6 | Argument that Merritt's workday was interrupted by non-work activity | | | XX | |
| 7 | Incidents, allegations, or complaints of improper conduct by Merritt toward any coworker | | XX | | |
| **Defendants' Motion in Limine** | | | | | |
| **Number** | **Topic** | **Agreed** | **Granted** | **Denied** | |
| A | Witness with no relevant knowledge of Plaintiff's claims: John Parum, Jon Sharp, Chris Whitney, and ~~Steve Hartgrove~~ (withdrawn). | | | XX | |
| B | Company-wide expenses | | XX | | |
| C | Defendants' size or net-worth | | XX | | |

| D | Other lawsuits | | **XX as modified—*Ferguson* is fair game.** | |
| | 1.5 OT multiplier | | **XX** | |
| F | Record-keeping violation | | **XX as modified— cannot say *violation* but can point out failure to keep records** | |
| G | Merritt's recent health status | XX | | |
| H | Merritt's financial hardship | XX | | |
| I | Damages outside scope of pleading | | XX | |
| J | Merritt's religious affiliation | XX | | |
| K | References to Golden Rule | | XX | |

### III.   GENERAL TRIAL PROCEDURES

#### A. Jury Selection

Jury Selection will begin at 9AM on Monday, May 22, 2023, in Courtroom #2 in the United States District Court, 800 Franklin, Waco, Texas 76701. Judge Gilliland will conduct voir dire.

Seven jurors will be selected for this trial. Each party will have four peremptory strikes. The parties will be allowed twenty (20) minutes per side ton conduct a general *voir dire* of the panel. The Court will provide the parties with a diagram of the room that identifies the jurors and their seat assignments.

#### B. Trial

Trial will begin after jury selection, at 1:30 PM, May 22, 2023, in Courtroom #2 in the United States District Court, 800 Franklin, Waco, Texas 76701. The parties shall jointly provide notebooks to the jurors on the first day of trial before the trial begins. The notebooks should include pages with pictures of the witnesses with space to take notes, a non-clicking pen, and blank pages for notes. The notebooks shall be provided to a Court staff, who will deliver the notebooks to the jurors.

Each party will have 12 hours of trial time; 30 minutes for opening statements, and 30 minutes for closing arguments. A party may not reserve trial time for closing—30 minutes is the limit. Trial should be complete on Friday (five days) and may require earlier start and later end times each day, as the Court deems necessary.

There will be minimal bench conferences in the presence of the jury during trial. If necessary, the Court may take a short recess from the trial to conduct any bench conferences and resolve any issues in the absence of the jury. If a party raises a dispute for the Court to resolve outside the presence of the jury, that time will count towards the party against whom the Court resolves such issue.

The parties shall use electronic exhibits for any exhibit displayed and/or given to the jury, unless providing or displaying an exhibit electronically is impractical or restricted under the protective order. For the sake of clarity, any witness, counsel, staff, and the Court may each have his or her own set of physical exhibits. However, physical exhibits will not be passed to the jury absent approval by the Court.

To facilitate a just and speedy trial, the parties shall Exchange witnesses lists at least 24 hours before the morning of the day a witness is to testify. Deposition designations with objections shall be provided to the court at least 24 hours before the morning of the day they will

be used. Finally, the parties are to exchange prepared demonstrative exhibits 48 hours before the morning of the day they will be used with any objections submitted to the Court at least 24 hours before the morning of the day they will be used.

The Court will conduct a Pre-Voir Dire conference on Thursday, May 18, 2023, at 2:30 PM, where the parties may address any questions or concerns regarding jury selection or trial procedures.

SIGNED this 16th day of May, 2023.

_____
DEREK T. GILLILAND
UNITED STATES MAGISTRATE JUDGE